UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| PAMELA NOLAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:20 CV 640 RWS |
| | ) | |
| ANDREW SAUL, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## <u>MEMORANDUM AND ORDER</u>

Plaintiff Pamela Nolan brings this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of the Commissioner's decision denying her application for Supplemental Security Income under Title XVI of the Social Security Act, 42 U.S.C. §§ 401. Section 1631(c)(3) of the Act, 42 U.S.C. § 1383(c)(3), provides for judicial review of a final decision of the Commissioner.  Because the Commissioner's final decision is supported by substantial evidence on the record as a whole, I will affirm the decision of the Commissioner.

### Procedural History

Plaintiff was born in 1967 and alleges she became disabled beginning June 28, 2016, because of arthritis, pinched nerves, depression and insomnia.  (Tr. 214.)

Plaintiff's application was initially denied on November 18, 2016.  (Tr. 84.) After a hearing before an ALJ on March 21, 2019, the ALJ issued a decision

denying benefits on May 30, 2019.  (Tr. 8-32.)  On April 21, 2020, the Appeals Council denied plaintiff's request for review.  (Tr. 1.)  The ALJ's decision is now the final decision of the Commissioner.  42 U.S.C. § 405(g).

In this action for judicial review, plaintiff contends that the ALJ erred in her duty to fully and fairly develop the record, leading to an unsupportable assessment of her residual functional capacity.  Plaintiff also contends that the ALJ failed at Step 5 of the evaluation.  She asks that I reverse the Commissioner's final decision and remand the matter for further evaluation.  For the reasons that follow, I will affirm the Commissioner's decision.

## Medical Records and Other Evidence Before the ALJ

With respect to the medical records and other evidence of record, I adopt plaintiff's recitation of facts (ECF #19) as they are admitted by the Commissioner (ECF #29).  Additional specific facts will be discussed as needed to address the parties' arguments.

## Discussion

A.   Legal Standard

To be eligible for disability insurance benefits under the Social Security Act, plaintiff must prove that she is disabled.  *Pearsall v. Massanari,* 274 F.3d 1211, 1217 (8th Cir. 2001); *Baker v. Secretary of Health & Human Servs.,* 955 F.2d 552, 555 (8th Cir. 1992).  The Social Security Act defines disability as the "inability to

2

engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).  An individual will be declared disabled "only if [her] physical or mental impairment or impairments are of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

To determine whether a claimant is disabled, the Commissioner engages in a five-step evaluation process.  *See* 20 C.F.R. § 404.1520; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987).  The Commissioner begins by deciding whether the claimant is engaged in substantial gainful activity.  If the claimant is working, disability benefits are denied.  Next, the Commissioner decides whether the claimant has a "severe" impairment or combination of impairments, meaning that which significantly limits his ability to do basic work activities.  If the claimant's impairment(s) is not severe, then he is not disabled.  The Commissioner then determines whether claimant's impairment(s) meets or equals one of the impairments listed in 20 C.F.R., Part 404, Subpart P, Appendix 1.  If claimant's impairment(s) is equivalent to one of the listed impairments, she is conclusively disabled.  At the fourth step, the Commissioner establishes whether the claimant

can perform his past relevant work.  If so, the claimant is not disabled.  Finally, the Commissioner evaluates various factors to determine whether the claimant is capable of performing any other work in the economy.  If not, the claimant is declared disabled and becomes entitled to disability benefits.

I must affirm the Commissioner's decision if it is supported by substantial evidence on the record as a whole.  42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002). Substantial evidence is less than a preponderance but enough that a reasonable person would find it adequate to support the conclusion.  *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001).  Determining whether there is substantial evidence requires scrutinizing analysis.  *Coleman v. Astrue*, 498 F.3d 767, 770 (8th Cir. 2007).

I must consider evidence that supports the Commissioner's decision as well as any evidence that fairly detracts from the decision.  *McNamara v. Astrue*, 590 F.3d 607, 610 (8th Cir. 2010).  If, after reviewing the entire record, it is possible to draw two inconsistent positions and the Commissioner has adopted one of those positions, I must affirm the Commissioner's decision.  *Anderson v. Astrue*, 696 F.3d 790, 793 (8th Cir. 2012).  I may not reverse the Commissioner's decision merely because substantial evidence could also support a contrary outcome. *McNamara*, 590 F.3d at 610.

When evaluating evidence of pain or other subjective complaints, the ALJ is never free to ignore the subjective testimony of the claimant, even if it is uncorroborated by objective medical evidence.  *Basinger v. Heckler*, 725 F.2d 1166, 1169 (8th Cir. 1984).  The ALJ may, however, disbelieve a claimant's subjective complaints when they are inconsistent with the record as a whole.  *See e.g., Battles v. Sullivan*, 902 F.2d 657, 660 (8th Cir. 1990).  In considering the subjective complaints, the ALJ is required to consider whether a claimant's subjective complaints are consistent with the medical evidence.  *See Polaski v. Heckler*, 739 F.2d 1320 (8th Cir. 1984) (listing factors such as the claimant's daily activities, the duration, frequency, and intensity of the pain, precipitating and aggravating factors, dosage, effectiveness and side effects of medication, and functional restrictions).[1]  When an ALJ gives good reasons for the findings, the court will usually defer to the ALJ's finding.  *Casey v. Astrue*, 503 F.3d 687, 696 (8th Cir. 2007).  However, the ALJ retains the responsibility of developing a full

---

[1] This was once referred to as a credibility determination, but the agency has now eliminated use of the term "credibility" to clarify that subjective symptom evaluation is not an examination of an individual's character.  However, the analysis remains largely the same, so the Court's use of the term credibility refers to the ALJ's evaluation of whether a claimant's "statements about the intensity, persistence, and limiting effects of symptoms are consistent with the objective medical evidence and other evidence of record."  *See* SSR 16-3p, 2017 WL 5180304, at *8 (Oct. 25, 2017); 20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3); *Lawrence v. Saul*, 2020 WL 4375088, at *5, n.6 (8th Cir. Jul. 31, 2020) (noting that SSR 16-3p "largely changes terminology rather than the substantive analysis to be applied" when evaluating a claimant's subjective complaints).

and fair record in the non-adversarial administrative proceeding. *Hildebrand v.*

*Barnhart*, 302 F.3d 836, 838 (8th Cir. 2002).

B.    <u>ALJ's Decision</u>

In her written decision, the ALJ found that plaintiff had not engaged in

substantial gainful activity since the alleged onset date of June 28, 2016.  (Tr.13.)

The ALJ found that plaintiff had the following severe impairments: degenerative

disc disease, osteoarthritis, clinical obesity, affective depressive disorder with

anxiety features, and post-traumatic stress disorder.  (Tr.13.)  The ALJ determined

that plaintiff's impairments or combination of impairments did not meet or

medically equal a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1.

(Tr. 14.)  The ALJ found plaintiff to have the residual functional capacity (RFC) to

perform light work with the following limitations:

> [Claimant can] occasionally climb ladders, ropes and scaffolds, and
> she can occasionally balance and crawl.  She should avoid hazards
> such as unprotected heights and moving mechanical parts, and she
> should avoid extreme cold and vibrations.  She can frequently handle
> and finger with her bilateral upper extremities.  The claimant can
> perform simple, routine tasks with minimal changes in job duties and
> job setting.

(Tr. 17.)  The ALJ relied upon vocational expert testimony to support a conclusion

that there were significant jobs in the economy of photocopy machine operator,

routing clerk and marking clerk that plaintiff could perform.  (Tr. 27.)  The ALJ

therefore found plaintiff not to be disabled.  (Tr. 27.)

6

Plaintiff claims that this decision is not supported by substantial evidence because there is no medical opinion in the record that addresses plaintiff's physical ability to function in the workplace and supports her RFC. For this reason, plaintiff claims that the ALJ erred in her duty to fully and fairly develop the record. Plaintiff also argues that the ALJ erred at Step 5 of the sequential evaluation, which requires remand.

C.    RFC

Plaintiff argues that the ALJ erred when formulating her RFC because there is no medical opinion upon which the ALJ could have based her RFC assessment. RFC is defined as "what [the claimant] can still do" despite his "physical or mental limitations." 20 C.F.R. § 404.1545(a). The ALJ must determine a claimant's RFC based on all of the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations. *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000) (citing *Anderson v. Shalala*, 51 F.3d 777, 779 (8th Cir. 1995)).

According to plaintiff, the ALJ should have ordered an orthopedic consultative examination to determine the extent of plaintiff's ability to handle and finger. Plaintiff argues the medical evidence of record does not support the ALJ's determination that she can frequently handle and finger. Here, the ALJ properly formulated plaintiff's RFC only after evaluating her subjective symptoms and

discussing the relevant evidence, including her testimony, the medical evidence, and her daily activities.  After consideration of all this evidence, the ALJ concluded that plaintiff retained the capacity to perform light work, with modifications tailored to her credible limitations.  In so doing, she did not substantially err.

First, the ALJ did obtain an internal medicine consultative examination of plaintiff, which included an evaluation of her hands and fingers.  On November 9, 2016, plaintiff was evaluated by Veronica Weston, M.D.  (Tr. 481.)  Dr. Weston noted plaintiff's complaints of arthritis, pinched nerves, depression, and insomnia. (Tr. 481.)  With respect to her hands, plaintiff reported arthritis and chronic pain in the DIP and PIP joints of both hands at a pain level of 7/10.  (Tr. 481.)  Plaintiff reported decreased grip strength and difficulty opening doors and dropping things. (Tr. 481.)  Dr. Weston diagnosed osteoarthritis in the hands.  (Tr. 482.)  Upon examination, plaintiff was observed to have normal gait and station, could stand and walk on toes and heels, and moved around the room without difficulty.  (Tr. 483.)  Dr. Weston observed only "mild deficits in hand dexterity."  (Tr. 483.)  She had no muscle atrophy and tenderness to palpation over the DIP and PIP joints of the right hand and over the CMC joint and wrist.  (Tr. 483.)  Dr. Weston noted some Heberden's nodes of the third through the fifth digits with the third DIP with ulnar deviation and mild swelling on the right hand, and some nodes at the DIP

8

joints of the second through fifth digits on her left hand, with ulnar deviation at the

third DIP joint.  (Tr. 483.)  No other joint deformities were observed.  (Tr. 483.)

Dr. Weston observed that plaintiff could not made a complete fist in the left hand,

but saw only "some mild deficits to hand dexterity."  (Tr. 483.)  Her pinch and grip

strength were 4/5.  (Tr. 484.)  Dr. Weston's clinical impression was history of

osteoarthritis of the hands with associated Heberden's nodes at the DIP joints and

some ulnar deviation of the third digits of the hands.  (Tr. 484.)  She assessed only

mild deficits to hand dexterity primarily in the left greater than right hand, noting

that plaintiff could not make a fist in her left hand.  (Tr. 484.)  Plaintiff does not

argue that Dr. Weston was not qualified to examine plaintiff or render an opinion

with respect to her osteoarthritis of her hands, nor does she point to any substantial

error resulting from obtaining an internal medicine examination as opposed to a

consultative examination by an orthopedist.  Here, the ALJ considered plaintiff's

request that she be referred for a post-hearing orthopedic consultative examination

for additional testing of her hands but denied it because the record already

contained Dr. Weston's examination as well as treatment records and recent

objective imaging of plaintiff's hands.  (Tr. 11.)  The ALJ did not substantially err

in denying this request, as substantial evidence of record supports her decision that

plaintiff can frequently handle and finger as determined in her RFC.

9

The ALJ thoroughly summarized all the medical evidence in the record, including the medical records relating to plaintiff's hands, in her formulation of plaintiff's RFC.  After careful consideration of the entire record, the ALJ incorporated into plaintiff's RFC those impairments and restrictions she found consistent with the evidence from the relevant period, and substantial evidence on a whole supports her determination. (Tr. 17-22.)

Plaintiff's treatment notes and objective medical evidence of record demonstrated limitations consistent with the ALJ's RFC determination.  (Tr. 17-22.)  In addition to Dr. Weston's examination, which revealed only mild deficits in hand dexterity, the ALJ reviewed the medical records from plaintiff's treating physician, Leonard Lucas, D.O.[2]  On June 28, 2016, Dr. Lucas noted osteoarthritic changes in both of plaintiff's hands, including Heberden's nodes and crooked DIP joints on her third digits.  (Tr. 302.)  However, he noted that plaintiff's MCP joints appeared normal and that she had no obvious joint swelling, although she reported pain in multiple joints, particularly her back.  (Tr. 302.)  Upon examination, Dr. Lucas detected no neurological abnormalities and observed that she had full strength in all extremities, with intact and symmetrical sensation and deep tendon reflexes.  (Tr. 302.)  Dr. Lucas diagnosed plaintiff with primary osteoarthritis of

---

[2] The ALJ mistakenly refers to Dr. Lucas as Dr. Leonard in her decision.

multiple joints, including both of her hands.  (Tr. 302.)  He administered prednisone injections to the hands.  (Tr. 302.)

On August 25, 2016, plaintiff saw Dr. Lucas again for a medication refill for her back and neck pain.  Dr. Lucas's examination of plaintiff's hands yielded the same results.  (Tr. 378.)  Dr. Lucas's examination of plaintiff's hands on April 18, 2017 again yielded the same results after plaintiff reported experiencing back pain after carrying a 40 pound bag of kitty litter.  (561-63.)  At her visit in June of 2017, plaintiff complained of shooting pain in her neck and arm which required pain medication; however, Dr. Lucas's observations of plaintiff's hands again remained consistent with prior visits.  (Tr. 556.)  Then on September 27, 2017, plaintiff complained that she "has hot swollen joints in hands" and "can not use hand or make a grip."  (Tr. 548.)  In addition to including the same results listed on all previous visits, Dr. Lucas' examination notes also state that "hand are hot tender and swollen all joints and can not make a fist."  (Tr. 549.)  The ALJ discussed this treatment note but discounted it as a true objective finding given that it uses the same language of plaintiff's subjective complaint and the same notation appears thereafter in her records, whether or not plaintiff was complaining of pain in her hands.  (Tr. 518, 525, 534).  The ALJ did not substantially err in concluding that this was not a true objective finding observed by Dr. Lucas given the identical, repetitive nature of Dr. Lucas' treatment notes, particularly given that Dr. Lucas

referred plaintiff to rheumatologist Adam Parker, M.D., on January 10, 2018 to evaluate her joint pain and other polyarthritis symptoms.

Plaintiff reported "issues with her hands" and pain in her back shooting down to her feet to Dr. Parker.  (Tr. 538.)  Upon examination, Dr. Parker noted osteoarthritic changes of the hands with Heberden and Bouchard's nodes and diffuse tenderness to palpation.  (Tr. 541.)  X-rays of plaintiff's bilateral hands taken the same day showed hypertrophic changes with loss of joint space and mild sclerosis about the distal interphalangeal joints of all fingers, in varying degrees, with mild sparing of the thumbs and right index finger, similar but advanced changes in the proximal interphalangeal joint of the proximal interphalangeal joint of the right fifth finger, and mild narrowing of other proximal interphalangeal joints.  (Tr. 594.)   Dr. Parker noted that plaintiff's laboratory tests showed elevation of the mild inflammatory markers, and he suggested transitioning plaintiff from NSAIDs to a low-dose prednisone to better control her symptoms. (Tr. 542.)

After cancelling eight previous appointments, plaintiff saw Dr. Parker again on October 31, 2018.  (Tr. 506.)  Plaintiff reported increased pain in her neck and hands, with diffuse puffiness and mild warmth of the hands, more on the left than right.  (Tr. 506.)  Dr. Parker again noted osteoarthritic changes of the hands with Heberden and Bouchard's nodes and diffuse tenderness to palpation.  (Tr. 507.)

12

Plaintiff was observed to have normal gait and was able to move around the room without difficulty.  (Tr. 507.)   Dr. Parker noted that plaintiff's x-rays of her hands showed osteoarthritic changes, possibly erosive, involving the interphalangeal joints, bilaterally.  (Tr. 507-08).  He assessed polyarthralgia, most consistent with erosive osteoarthritis.  (Tr. 508.)  Plaintiff declined Dr. Parker's suggestion to take a steroid.  (Tr. 508.)

After consideration of all the medical evidence of record, the ALJ concluded that the medical evidence supported a conclusion that plaintiff was reasonably limited to handling and fingering with her bilateral hands on only a frequent basis. (Tr. 22.)  In particular the ALJ found Dr. Weston's findings, that plaintiff had only "mild" deficits to hand dexterity overall and a 4 out of 5 pinch and grip strength bilaterally, supported a conclusion that plaintiff can handle and finger bilaterally on a frequent basis, as opposed to the greater limitations urged by plaintiff.  (Tr. 22.)  Because sufficient evidence on the record as a whole supports the ALJ's RFC determination, she was not required to order additional consultative examinations of the plaintiff. *See Buford v. Colvin*, 824 F.3d 793, 797 (8th Cir. 2016) ("[T]he ALJ is required to order further medical examinations only if the existing medical record does not provide sufficient evidence to determine whether the claimant is disabled.") (quoting *Martise v. Astrue*, 641 F.3d 909, 926-27 (8th Cir. 2011)).  This is particularly true where plaintiff submitted no opinion from any medical provider

that she was incapable of light work with frequent handling and fingering. Although plaintiff believes that the ALJ should have weighed the medical evidence of record differently to support greater limitations on handling and fingering, it is not my role to reweigh the medical evidence of plaintiff's limitations considered by the ALJ in her determination of plaintiff's RFC. *Hensley v. Colvin*, 829 F.3d 926, 934 (8th Cir. 2016). The ALJ's determination that plaintiff was limited to frequent handling and fingering is supported by substantial evidence of record, including Dr. Weston's findings of only mild deficits in hand dexterity, plaintiff's ability to lift a 40-pound bag of kitty litter, and her examinations which showed that plaintiff retained full strength and intact sensation. (Tr. 19-20, 302, 306, 311, 377, 468, 507, 518, 525, 541, 549, 556, 562, 570, 575, 688.) Moreover, the ALJ accounted for plaintiff's credible limitations by restricting her to frequent handling and fingering and lifting limitations. The ALJ's determination that plaintiff could perform a restricted range of light work is supported by substantial medical evidence of record.

Here, in addition to consideration of the medical evidence, the ALJ properly formulated plaintiff's RFC only after evaluating her subjective symptoms and discussing the relevant evidence, including her testimony and daily activities. After consideration of all this evidence, the ALJ found that her allegations were not fully consistent with the medical evidence and other evidence in the record.

(Tr. 19.)  When considering a claimant's self-reported symptoms and limitations, the ALJ must evaluate whether the claimant's subjective statements are consistent with and supported by the record as a whole.  20 C.F.R. § 404.1529(c); SSR 16-3p. "The credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts."  *Pearsall*, 274 F.3d at 1218.  I must defer to the ALJ's credibility determinations "so long as such determinations are supported by good reasons and substantial evidence."  *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005).  When determining the credibility of a claimant's subjective complaints, the ALJ must consider all evidence relating to the complaints, including the claimant's daily activities; the duration, frequency and intensity of the symptoms; any precipitating and aggravating factors; the dosage, effectiveness and side effects of medication; and any functional restrictions.  20 C.F.R. § 404.1529(c)(3); SSR 16-3p; *Halverson v. Astrue*, 600 F.3d 922, 931 (8th Cir. 2010); *Polaski,* 739 F.2d at 1322.  "[T]he duty of the court is to ascertain whether the ALJ considered all of the evidence relevant to the plaintiff's complaints of pain . . . and whether the evidence so contradicts the plaintiff's subjective complaints that the ALJ could discount his or her testimony as not credible."  *Masterson v. Barnhart*, 363 F.3d 731, 738-39 (8th Cir. 2004).  It is not enough that the record contains inconsistencies.  Instead, the ALJ must specifically demonstrate in her decision that she considered all of the evidence.  *Id.* at 738; *see also Cline v. Sullivan*, 939 F.2d 560, 565 (8th Cir. 1991).

15

Where an ALJ explicitly considers the relevant factors but then discredits a claimant's complaints for good reason, the decision should be upheld. *Hogan v. Apfel*, 239 F.3d 958, 962 (8th Cir. 2001).

Here, the ALJ summarized plaintiff's testimony regarding her daily activities and subjective allegations of pain and found plaintiff's statements about the intensity, persistence, and limiting effects only partially consistent with the evidence of record. The ALJ acknowledged plaintiff's reported symptoms and went on to weigh these allegations against the evidence of record as required by 20 C.F.R. § 404.1529(c)(3). The ALJ was not required to fully credit all of plaintiff's assertions regarding the limitations given her activities, which included household chores such as caring for a pet, carrying a 40 pound bag of kitty litter, laundry, sweeping, vacuuming, and dusting, as well as traveling to Florida for vacation and to visit family.[3]  (Tr. 18, 47.)  *Johnson v. Chater*, 87 F.3d 1015, 1017 (8th Cir. 1996).  "Acts such as cooking, vacuuming, washing dishes, doing laundry, shopping, driving, and walking, are inconsistent with subjective complaints of disabling pain." *Medhaug v. Astrue*, 578 F.3d 805, 817 (8th Cir. 2009).  "The inconsistency between [plaintiff's] subjective complaints and evidence regarding

---

[3] Although plaintiff told her doctor that she "picniqued, BBQ'ed and went to Disney World" while in Florida (Tr. 648.), she denied it at the hearing before the ALJ.  (Tr. 47.)

her activities of daily living also raised legitimate concerns about her credibility."
*Vance v. Berryhill*, 860 F.3d 1114,1121 (8th Cir. 2017).

The medical evidence of record also supports the ALJ's findings and was
properly considered by the ALJ as one factor when assessing plaintiff's credibility
and evaluating her subjective complaints. *See Goff v. Barnhart*, 421 F.3d 785, 793
(8th Cir. 2005) (lack of corroborating medical evidence is one factor to consider
when evaluating subjective complaints of pain).   Although plaintiff testified that
she was unable to pick up things, button clothing, open cans, or grip things, Dr.
Weston found only mild deficits in hand dexterity and 4/5 grip/pinch strength.  (Tr.
483.)  Moreover, x-rays taken of plaintiff's hands showed "advanced" changes in
only one proximal interphalangeal joint on her right fifth finger, with only mild
narrowing of other proximal interphalangeal joints. (Tr. 594.)   Here, after
summarizing the objective medical evidence of record the ALJ properly concluded
that plaintiff's subjective allegations regarding the use of her hands were of limited
credibility because they were not supported by the objective medical evidence of
record, an important factor for evaluating a claimant's credibility.  *Stephens v.
Shalala*, 50 F.3d 538, 541 (8th Cir. 1995).

Additionally, the ALJ also properly considered plaintiff's conservative
treatment for her allegedly disabling hand pain.  (Tr. 18-19, 21, 23, 25.)   Plaintiff
received pain medication for her impairments that helped to some degree and did

17

not cause side effects.  (Tr. 18, 23, 230, 310, 312, 569.)  She also received

injections and had good results with cervical and thoracic manipulations.  (Tr. 19,

23, 42, 303, 312,380, 536, 551, 558, 564, 569.)  If a claimant's pain is controlled

by treatment or medication, it is not considered disabling.  *See Cypress v. Colvin,*

807 F.3d 948, 951 (8th Cir. 2015).  Moreover, she sought only limited treatment

from Dr. Parker, skipping eight appointments before she saw him a second time in

October of 2018 for hand pain.  (Tr. 506.)  She also declined the medication

therapy recommended by Dr. Parker.  (Tr. 508.)  *See Lawrence v. Saul*, 970 F.3d

989, 996 (8th Cir. 2020) (ALJ's conclusions as to the severity of pain and

limitations consistent with fact that claimant was prescribed generally conservative

treatment).  In evaluating plaintiff's subjective complaints of pain, "an ALJ may

properly consider the claimant's . . . failing to take prescription medications [and]

seek treatment . . . ."  *Choate v. Barnhart*, 457 F.3d 865, 872 (8th Cir. 2006)

(citations omitted).

The ALJ expressly acknowledged that plaintiff was experiencing pain and

had some limitations on the use of her hands, but concluded, after evaluating the

entirety of the record, that plaintiff's limitations were not so severe as to be

disabling.  Where, as here, an ALJ seriously considers but for good reasons

explicitly discounts a claimant's subjective complaints, the Court will not disturb

the ALJ's credibility determination.  *Johnson v. Apfel*, 240 F.3d 1145, 1148 (8th

Cir. 2001).  The ALJ evaluated all of the medical evidence of record and

adequately explained her reasons for the weight given this evidence.   Substantial

evidence in the record as a whole supports the ALJ's RFC determination, so I will

affirm the decision of the Commissioner as within a "reasonable zone of choice."

*Fentress v. Berryhill*, 854 F.3d 1016, 1021 (8th Cir. 2017) (citing *Owen v. Astrue*,

551 F.3d 792, 798 (8th Cir. 2008)).

D.    Step 5 Analysis

Plaintiff argues that remand is required because the vocational expert's

testimony upon which the ALJ relied conflicted with the Dictionary of

Occupational Titles (DOT).  Specifically, plaintiff contends that the reasoning

levels of the jobs identified by the VE in response to a hypothetical posed by the

ALJ are inconsistent with the RFC's limitation to simple, routine tasks.

Here, the VE testified that a hypothetical claimant with plaintiff's

vocational profile and RFC could perform work as a photocopy machine

operator, a routing clerk, and a marking clerk.  (Tr. 27, 53-54.)  The VE further

testified that her testimony was consistent with the DOT.  (Tr. 56.)  The DOT

defines these identified jobs as having a reasoning level of two, which includes

the ability to apply commonsense understanding to carry out detailed but

uninvolved written or oral instructions.  *See* DOT, 1991 WL 671745, 1991 WL

672133, 1991 WL 671082.   Although the ALJ has a duty to ask about "any

19

possible conflict" between VE evidence and the DOT, the Eighth Circuit Court of

Appeals has held that there is no conflict between an RFC limitation to simple,

routine work and a job requiring a reasoning level of two.  *See Moore v. Astrue*,

623 F.3d 599, 604 (8th Cir. 2010).  Therefore, no remand is required to resolve

this alleged conflict.  *See Welsh v. Colvin*, 765 F.3d 926, 930 (8th Cir. 2014).

Because substantial evidence on the record as a whole supports the ALJ's

determination that someone with plaintiff's RFC could perform the jobs of

photocopy machine operator, routing clerk, and marking clerk, the decision of the

Commissioner must be affirmed.

## Conclusion

When reviewing an adverse decision by the Commissioner, the Court's task

is to determine whether the decision is supported by substantial evidence on the

record as a whole.  *Davis v. Apfel*, 239 F.3d 962, 966 (8th Cir. 2001).  "Substantial

evidence is defined to include such relevant evidence as a reasonable mind would

find adequate to support the Commissioner's conclusion."  *Id.*  Where substantial

evidence supports the Commissioner's decision, this Court may not reverse the

decision merely because substantial evidence exists in the record that would have

supported a contrary outcome or because another court could have decided the case

differently.  *Id.*; *see also Igo v. Colvin*, 839 F.3d 724, 728 (8th Cir. 2016); *Buckner*

*v. Astrue,* 646 F.3d 549, 556 (8th Cir. 2011).

20

For the reasons set out above, a reasonable mind can find the evidence of record sufficient to support the ALJ's determination that plaintiff was not disabled. Because substantial evidence on the record as a whole supports the ALJ's decision, it must be affirmed.  *Davis,* 239 F.3d at 966.

Accordingly,

**IT IS HEREBY ORDERED** that that the decision of the Commissioner is affirmed, and Pamela Nolan's complaint is dismissed with prejudice.

A separate Judgment is entered herewith.


_____
RODNEY W. SIPPEL
UNITED STATES DISTRICT JUDGE


Dated this 3rd day of June, 2021.